José de Jesús Rivera, AZ State Bar No. 004604
Aaron Hall, State Bar No. 024273
MILLER PITT FELDMAN & MCANALLY, PC
2800 N. Central Avenue, Suite 840
Phoenix, Arizona 85004-1069
Phone: (602) 266-5557
Fax: (602) 266-5557
josedejesusrivera@mpfmlaw.com
ahall@mpfmlaw.com
jlarsen@mpfmlaw.com (designated for minute entries)

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jada Trombley, a single woman; Ericson Ashley, a single man; Louise Smith, a single woman; Isabelle Lane, a married woman; Jennifer Nelson, a single woman; Stephanie Nelson, a single woman; Rechinda Nelson, a single woman; Vada Cummings, a married woman; Isaura Nez, a married woman; Sheila Nelson, a single woman; Tito Nelson, a single man; and Reed Nelson, a single man,<br><br>Plaintiff,<br><br>v.<br><br>United States of America; Darryl J. Fisher and Jane Doe Fisher, a married couple,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>(Federal Tort Claims Act - Medical Malpractice) |

Plaintiff alleges as follows:

**JURISDICTIONAL ALLEGATIONS**

    1.    This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

2. This Court has jurisdiction under 28 U.S.C. §1346(b).

3. Plaintiff Jada Trombley is the adult daughter of the decedent, Teryl Ashley. She resides presently and at all relevant times in Holbrook, Arizona.

4. Plaintiff Louise Smith is the mother of the decedent, Teryl Ashley. She resides presently and at all relevant times in Sanders, Arizona.

5. Plaintiff Ericson Ashley was the decedent, Teryl Ashley's husband at the time of her death. He resides and at all relevant times has resided in Holbrook, Arizona.

6. Isabelle A. Lang, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

7. Jennifer Nelson, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times alleged in Winslow, Arizona.

8. Stephanie Nelson, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

9. Rechinda Nelson, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

10. Vada Cummings, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

11. Isaura A. Nez, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

12. Sheila Nelson, is the sister of the decedent, Teryl Ashley. She resides presently and at all relevant times in Winslow, Arizona.

13. Tito Nelson, is the brother of the decedent, Teryl Ashley. He resides presently and at all relevant times in Winslow, Arizona.

14. Reed Nelson, is the brother of the decedent, Teryl Ashley. He resides presently and at all relevant times in Sanders, Arizona.

15. All acts and omissions complained of occurred within the District of Arizona in Winslow, Arizona, near the border of the Navajo Nation.

16. The Winslow Indian Health Care Center (WIHCC) is located on land owned by the federal government for the benefit of Native Americans. WIHCC is also a non-profit corporation, established by and wholly owned by the Navajo Nation to provide health care to Native Americans, the vast majority of whom are members of the Navajo Nation.

17. Public Law 93-638 allows federal agencies to contract with Native American Tribes to perform services for the tribes. 25 U.S.C. §5321. WIHCC is a P.L. 93-638 entity pursuant to the Self-Determination and Education Assistance Act 25 U.S.C. § 5321 and holds a Self Determination Agreement between the Navajo Nation and the Indian Health Service.

18. The federal government is liable for the torts committed by entities operating under Self Determination Contracts, as well as their employees, agents and servants. 25 U.S.C. 5321(d); also see *Snyder v. Navajo Nation*, 382 F.3d 892, 896-97 (9th Cir. 2004).

19. Defendant Darryl J. Fisher, M.D. (Fisher) is physician licensed to practice medicine by the State of New Mexico. The New Mexico Medical Board lists his specialty as Emergency Medicine.

20. Upon information and belief Defendant Fisher was an employee, agent and/or servant of WIHCC when all acts complained of here took place.

21. Defendants Fisher and Jane Doe Fisher are married couple who at all material times were residents of Flagstaff, Coconino County, Arizona, acting within the course and scope of marital community.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

22. On February 13, 2020, Plaintiff served a claim for administrative disposition with the, giving notice for the claim and requesting four million dollars ($4,000.000.00) to resolve that claim.

23. The United States of America never denied Plaintiff's claim, however, six months have passed since the notice of claim was received.

**GENERAL ALLEGATIONS**

24. Plaintiffs incorporate all other paragraphs.

25. At all times alleged, employees, agents and/or servants of WIHCC acted in the course and scope of their employment.

26. At approximately 3 p.m. on January 23, 2019, Teryl Ashley presented at the WIHCC Urgent Care clinic. She reported chest pain, coughing, a three day old sore throat, diarrhea, nausea, fever and chills. She also reported nasal congestion and overall body ache. Her overall pain was a 10 out of 10.

27. Defendant Fisher examined Ms. Ashley and his notes indicate that Ms. Ashley's respiratory system was audibly clear in both lungs; her heart rate and rhythm were normal with no murmurs, clicks or rubs.

28. Ms. Ashley was placed on oxygen and given a non-steroidal anti-inflammatory, an anti nausea medicine and saline intravenously.

29. A chest x-ray showed Ms. Ashley's lung volumes were low and that she had a patchy collapse of lung tissue with a loss of lung volume.

30. Ms. Ashley was complaining of increased pain and anxiety and so she was given medicine to help with her anxiety.

31. A CT scan of Ms. Ashley's chest showed signs of collapsed of lung tissue. It also showed prominent mediastinal lymph nodes that were likely reacting to an infection in Ms. Ashley's body.

32. When Ms. Ashley arrived WIHCC she had an elevated heart rate, fever, high respiration rate, high blood pressure and low oxygen saturation levels. While at WIHCC she was unable to maintain oxygen saturation levels above 88% without being given oxygen, which remained her condition at the time of discharge. All of Ms. Ashley's other vital signs remained high at the time of discharge with a temperature of 102.56 degrees, her pulse was at 102 beats per minute and her respiration rate was 19 beats per minute.

33. Defendant Fisher diagnosed Ms. Ashley with an upper respiratory infection, acute sinusitis, acute gastroenteritis, fever and acute chronic anxiety. He signed her discharge at 9:58 p.m. with orders for her to stay on a clear liquid diet for 24 hours and to follow-up as needed if her symptoms got worse.

34. After Dr. Fisher ordered Ms. Ashley's discharge, she remained at WIHCCC while the medical staff continued to monitor her. She was given a flu test just before 11 p.m., which returned with a positive result.

35. Ms. Ashley was ultimately discharged from WIHCC at 11:33 p.m. Upon discharge was prescribed some medications to address her pain and anxiety, but she was not given any antibiotics nor anything such as Tamiflu to address her positive flu result.

36. Ms. Ashley's condition continued to worsen after leaving WIHCC. She started vomiting, she continued to be in tremendous pain, she was spitting up blood, and still had difficulty breathing.

37. At around 6 a.m. the following morning Ms. Ashley's husband called an ambulance and she was taken to the emergency department at Little Colorado Medical Center (LCMC) in Winslow, Arizona.

38. Ms. Ashley presented with symptoms of shortness of breath, chest pain, abdominal pain, nausea and muscle aches. She also continued to cough copious amounts of blood and sputum.

39. LCMC medical personnel found that Ms. Ashley was in respiratory distress. She was diagnosed with pneumonia and pulmonary edema. She was placed on oxygen and given ipratropium-albuterol via a nebulizer, as well as intravenous aspirin, and azithromycin, ceftriaxone and methylprednosolone.

40. An x-ray and CT Scan of Ms. Ashley's chest showed pneumonia in both lungs and that Ms. Ashley was experiencing respiratory failure. An electrocardiogram showed sinus tachycardia, with frequent extra heartbeats.

41. Ms. Ashley's positive flu from the previous night was confirmed and her blood work came back showing bands of 35%. Medical personnel determined that Ms. Ashley's condition was critical and ordered her to be transferred via helicopter to Flagstaff Medical Center (FMC).

42. Prior her transfer Ms. Ashley was placed on acetaminophen, Tamiflu, zofran and vancomycin. Her vital signs at this time showed blood pressure at 160/81, a heart rate of 120 beats per minute, a respiration rate of 30 breaths per minute, a

temperature of 100.22 degrees and oxygen saturation levels of 79% on room air and 92% with oxygen at 25 liters per minute.

43. Ms. Ashley arrived at FMC shortly after 10 a.m. on January 24, 2019. She was admitted directly to the intensive care unit (ICU). Her respiration rate was above 41 breaths per minute upon arrival and her heart rate was consistently well over 100 beats per minute. Ms. Ashley was suffering from acute respiratory failure so she was immediately intubated and placed on a ventilator. They continued to treat her with Tamiflu and antibiotics. At this point she was septic.

44. Throughout Ms. Ashley's time at FMC she was increasingly hypoxic despite the pressors going full out. A decision was made to paralyze Ms. Ashley in an attempt to avoid organ failure. Despite this step Ms. Ashley remained hypoxic, hemodynamically unstable and had a heart rate spiking into the 180 beats per minute range.

45. In addition to the respiratory failure, the septic shock was also causing Ms. Ashley's kidneys to shut down. Attempts were made to start dialysis for critically ill patients, but they were not able to do so due to her persistently low blood pressure.

46. Medical staff attempted to rotate Ms. Ashley to a prone position to improve lung function. As they attempted to transition Ms. Ashley her heart rate dropped. Additional epinephrine was administered to bring her heart rate back up, but her heart stopped at 11:46 a.m. on January 25, 2019, approximately 36 hours after being discharged from WIHCC.

## COUNT ONE
### Medical Negligence - WIHCC

47. Plaintiff incorporate all other paragraphs

48. Defendant WIHCC is a licensed health care provider.

49. Defendant WIHCC's employees, agents and/or servants were acting within the course and scope of their employment and/or engagement with Defendant WIHCC when Plaintiff suffered the harm alleged. Defendant WIHCC is vicariously liable for its employees', agents', and/or servants' negligence described below.

50. Defendant WIHCC's employees, agents and/or servants owed a duty to Decedent Ashley to exercise the degree of care, skill and learning expected of a reasonable, prudent licensed health care provider in the profession or class to which they belong acting under the same or similar circumstances.

51. Defendant WIHCC's employees, agents an/or servants failed to exercise that degree of care, skill, and learning expected of a reasonable, prudent licensed health care provider in the profession or class to which they belong under the same or similar circumstances by failing to properly diagnose and treat Teryl Ashley's secondary bacterial pulmonary infection superimposed on an Influenza A, including without limitation failing to transfer Teryl Ashley to a facility with a higher level of care.

52. Defendant WIHCC's employees', agents' and/or servants' failures described above proximately caused the death of Teryl Ashley.

53. As a result of the failures of the Defendant as stated above, Plaintiffs suffered actual and consequential damages including but not limited to serious physical, emotional, economic injury, loss of consortium and other miscellaneous expenses.

## COUNT TWO

### Medical Negligence - Fischer

54. Plaintiff incorporate all other paragraphs

55. Defendant Fischer is a licensed health care provider.

56. Defendant Fischer owed a duty to Decedent Ashley to exercise the degree of care, skill and learning expected of a reasonable, prudent licensed health care provider in the profession or class to which he belongs acting under the same or similar circumstances.

57. Defendant Fischer failed to exercise that degree of care, skill, and learning expected of a reasonable, prudent licensed health care provider in the profession or class to which he belongs under the same or similar circumstances by failing to properly diagnose and treat Teryl Ashley's secondary bacterial pulmonary infection superimposed on an Influenza A, including without limitation failing to transfer Teryl Ashley to a facility with a higher level of care.

58. Defendant Fischer's failures described above proximately caused the death of Teryl Ashley.

59. As a result of the failures of the Defendant as stated above, Plaintiffs suffered actual and consequential damages including but not limited to serious physical, emotional, economic injury, loss of consortium and other miscellaneous expenses.

**REQUEST FOR RELIEF**

Plaintiff requests judgment in her favor and against Defendants as follows:

    a. For Plaintiffs' general and special damages in an amount to be proven at trial;

    b. For Plaintiffs' incurred costs together with interest at the highest lawful rate on the total amount of all sums awarded from the date of judgment until paid;

    c. For the fair and reasonable monetary value of Plaintiffs' past, present, and future pain and suffering in an amount to be proven at trial;

    d. For Plaintiffs' lost opportunity for financial gain, future earning capacity, loss of consortium, and loss of love and affection;

    g. For such other and further relief as this Court may deem just and proper.

Dated this 6th day of November, 2020

                          MILLER, PITT, FELDMAN
                          & McANALLY, PC

                          By   */s/Aaron Hall*
                             José de Jesús Rivera
                             Aaron Hall

                             Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2020, I electronically transmitted these documents with the Clerk of the Court's Office using the Clerk's E-filing system CM/ECF.

I further certify that a copy of the foregoing hand delivered to:


Michael Bailey, U.S. Attorney District of Arizona
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

   /s/ *Jennie Larsen*